### BILL BARBEE v. THE STATE.

*No. 3260.   Decided February 27.*

1. **Theft of Cattle—Newly Discovered Evidence.**—Where the evidence on a trial for theft of cattle tended to show that defendant had agreed to take and sell a certain "roan steer" for a third party, and the animal for theft of which defendant was being prosecuted was a "roan steer," *held,* that the court should have granted a new trial for the newly discovered testimony of a witness, who would swear that he saw this third party put a roan steer of the same description and with the same marks on him in the pasture with defendant's other cattle prior to defendant's sale of the alleged stolen animal.

2. **Evidence Irrelevant and Prejudicial—Practice as to.**—Where a witness for the State testified that he and the defendant were talking about some cattle in a pasture, and defendant claimed said cattle and told him that they were "crooked," *held,* that inasmuch as the statements testified to did not identify the cattle alluded to as "crooked" in any manner with the description of the stolen animal, by marks, brand, or color, that such testimony was both irrelevant and immaterial, and that the court erred in not striking it out on defendant's motion to that effect.

APPEAL from the District Court of Jones. Tried below before Hon. J. V. Cockrell.

Appellant was tried and convicted in the court below for the theft of one head of cattle, and his punishment assessed at four years in the penitentiary. The facts are sufficiently stated in the opinion.

*Bassett, Seay & Muse,* for appellant.

No brief on file for the State.

HURT, JUDGE.—This is a conviction for the theft of a certain roan steer, branded J Q on the left side, C A T on the right side, and $\bar{8}$ on the left side, and alleged to be the property of J. Q. Hanna.

The facts upon which the State relied for conviction, condensed, are these: Hanna owned cattle branded J Q on left side, C A T on right side. A roan steer in these brands, with a road brand and a brand of $\bar{8}$, was found in J. M. Daughtery's pasture in the Indian Territory. Daughtery had never seen this roan steer in his pasture, but swears, that "if any of the $\bar{8}$ cattle in my pasture in the Nation had the C A T brand and the J Q brand, then they were bought by me from the defendant." About the 1st of April, 1890, defendant went to Daughtery and asked what he would give for steers; they were good steers, and he could get them cheap, so as to make something on them. Daughtery told him that he would give him what they were worth. In two or three days after this appellant put about one hundred steers in Daughtery's pasture. The cattle remained in the pasture until about the 1st of May, when they were counted out and shipped to Daughtery's pasture in the Nation. The cattle bought from appellant by Daughtery had other old ·brands on them, but he did not know what they were. He only took a bill of sale to $\bar{8}$ brand, paying $13 per head. Middleton was present at Daughtery's pasture when the $\bar{8}$ brand cattle were branded and delivered to Daughtery. He says: "We rounded up the cattle, and each man's cattle were put in a separate bunch. The $\bar{8}$ cattle were cut into the defendant's bunch, all except one steer, which Hal Williams claimed. This steer was branded $\bar{8}$ and other brands, and Daughtery would not take him." Middleton heard a conversation between Williams and defendant about another steer branded $\bar{8}$. Williams said that one of the steers in his bunch belonged to him (Williams), and he requested defendant to drive and sell him and account. Defendant would not agree to do this unless the steer was pointed out to him. One Thompson was also at the pasture, and he says he heard the conversation between Williams and defendant about the steer, which was a roan; and that defendant agreed to sell it, and account to Williams for that steer.

These are the facts attending the sale and delivery of the $\bar{8}$ cattle to Daughtery. Daughtery states that if the roan steer was in his pasture, branded $\bar{8}$, then he bought him from appellant. This is Daughtery's opinion, it is true, but there was no objection to it; and when the facts upon which the opinion is based are considered, they are found to be sufficient to prove that Daughtery received the roan steer from appel-

lant. The evidence shows that no one but appellant delivered to Daughtery a steer branded $\bar{8}$; that when the cattle were delivered to Daughtery his road brand was placed upon them, and they were shipped to the Nation. Daughtery knew all these facts, and could safely state that he received all the cattle branded $\bar{8}$ found in his pasture from defendant, for he received no such cattle from any one else. We have therefore sufficient evidence to establish recent possession in appellant when he delivered the steer to Daughtery. This being conceded, do not the circumstances surrounding this transaction render it reasonably probable that the roan steer was either delivered by appellant for Williams without the knowledge of appellant, and that Williams placed this steer in the pasture, and that appellant, without observing it, had delivered it to Daughtery? We think this quite probable, especially that Williams had placed the roan steer in the pasture before the cattle were tallied, road branded, and delivered; and that this was unknown to defendant at the time he delivered the cattle.

This being reasonably probable, did not the court err in refusing a new trial on account of the newly discovered testimony of J. H. Miller, who swears that he saw Hal Williams, in the month of April, 1890, put a red roanish *three-year-old* steer in Daughtery's pasture in Jones County, that the steer was branded C A T, J Q, and $\bar{8}$; that he had heard that defendant had made Williams turn one steer out, and asked Williams about it; that Williams said, "No;" that he got that steer in, but turned out another—a brindle steer? Now, while the conversation between Miller and Williams, as it did not occur when he was placing the steer in the pasture, may not be competent evidence, certainly the fact that Williams placed such a steer in the pasture in April was of very great importance, when taken in connection with all the facts in the case.

One Jim Camp testified, that about April 1, 1890, he was riding in Daughtery's pasture with defendant. The $\bar{8}$ cattle were then in there, and defendant and Camp were talking about them. Defendant told Camp that he was getting standing on said cattle; that they were crooked cattle, but that he was safe, although somebody else might get into trouble about them. Appellant moved the court to exclude these statements, and the motion being overruled, the defendant reserved a bill of exceptions. It does not appear from Camp's statements that appellant and Camp were in sight that day of a single head of cattle branded either J Q or C A T. It does not appear from anything in the record that defendant did not own the cattle branded $\bar{8}$. The contention is, that a roan steer, branded J Q and C A T, having the $\bar{8}$ brand also, had been taken and sold to Daughtery by appellant, but the $\bar{8}$ was not in issue. If appellant had made the above remarks about the J Q or C A T, then there would have been some pertinency in the remarks

to this case. We are of the opinion that they were irrelevant, and calculated to prejudice the case.

Because the court refused to strike out Camp's testimony, and because a new trial should have been awarded to procure the testimony of Miller, the judgment is reversed and remanded.

*Reversed and remanded.*

Judges all present and concurring.